STATE OF NORTH CAROLINA v. JAMES EVERETTE TREECE, JR.

No. COA97-631

(Filed 17 March 1998)

### 1. Criminal Law § 243 (NCI4th Rev.)— Interstate Agreement on Detainers—180-day period for trial—beginning of period

The trial court did not err by not dismissing charges of trafficking in methamphetamine where defendant alleged that he was not timely tried in accordance with the Interstate Agreement on Detainers (IAD), as codified in N.C.G.S. § 15A-761, which requires that a prisoner shall be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court written notice of the place of his imprisonment and his request for a final disposition. Although defendant here argues that his 180 days began to run on the date the district attorney should have received the request rather than on the date the request was actually received, the language of the statute cannot be interpreted as requiring the district attorney to inquire as to whether a defendant has mailed a written notice of his request. The guarantee of a disposition within 180 days is mandated by the General Assembly and is not a constitutional request; therefore, policy arguments regarding whether defendant should bear the consequences of the failure of delivery are more appropriately addressed to the legislature.

### 2. Searches and Seizures § 117 (NCI4th)— methamphetamine—search of defendant's home—secured before warrant obtained—evidence admissible

The trial court did not err in a prosecution for trafficking in methamphetamine by not suppressing evidence seized during a search of defendant's residence where officers went to defendant's residence after receiving information from an informant that a quantity of methamphetamine was stored at defendant's residence; a woman who identified herself as the maid answered the door and told officers that neither defendant nor his wife were at home; the officers had been warned by an informant that the controlled substances might be moved quickly and believed it necessary to secure the scene to prevent evidence being removed or destroyed; an officer testified that it was necessary to enter the residence to ensure that no one was inside; that officer made a

cursory search, touching nothing but doorknobs; and an officer remained outside the residence while a search warrant was obtained. The officer did not obtain the warrant based upon information obtained during his security check of the premises and entry into defendant's residence did not contribute to the discovery of the evidence seized under the warrant.

Appeal by defendant from judgment entered 13 September 1996 by Judge Sanford L. Steelman, Jr. in Rockingham County Superior Court. Heard in the Court of Appeals 15 January 1998.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Thomas D. Zweigart, for the State.*

*George E. Crump, III, for defendant-appellant.*

McGEE, Judge.

Defendant James Everette Treece, Jr. was convicted of trafficking in methamphetamine by possession of more than four hundred grams of the controlled substance on 13 September 1996. At the time of his conviction, defendant was serving a thirty-six month sentence in federal prison in Kentucky for an unrelated 1994 methamphetamine conviction. Prior to trial the defendant filed a motion to dismiss the charges pending against him on the grounds that the State had failed to timely proceed in his prosecution according to the Interstate Agreement on Detainers. Defendant also filed a motion to suppress the evidence seized from his residence on 15 April 1992. The trial court denied both motions. On 13 September 1996 the trial court entered judgment sentencing defendant to forty years imprisonment. Defendant appeals from this judgment.

At trial the State's evidence tended to show the following. After receiving information from an informant that a quantity of methamphetamines was stored at defendant's residence, Major Phillip Sweat and Lieutenant Larry Harrelson went to the residence of defendant and his wife on the afternoon of 15 April 1992 between three and four o'clock p.m. A woman who identified herself as a maid answered the door and told Sweat that neither Mr. or Mrs. Treece was present and the only other person at the residence was her husband. Sweat testified that he believed it was necessary to secure the scene to prevent any evidence located in the residence from being removed or destroyed based upon a warning given to him by an informant that the controlled substances might be "moved quickly." He further testified

that it was necessary to enter the residence to ensure there was no one inside. When he made a cursory search of the residence, he stated he did not touch anything except doorknobs. He then left the premises in order to obtain a search warrant and Harrelson remained outside the residence to prevent anyone from entering until a search warrant was issued.

After the search warrant was obtained, Detective Sergeant William Bryan Thorpe searched the residence and found approximately three pounds of methamphetamine in a briefcase located in the dining room. A warrant was issued for defendant's arrest on 16 April 1992. On 24 September 1992, defendant made a voluntary confession that he was in possession of the methamphetamine on 15 April 1992.

On 4 October 1994 the district attorney sent a certified copy of the warrant pending against defendant in Richmond County, North Carolina and a request for detainer to the United States Marshall. On 16 January 1996 defendant submitted a request for disposition of the pending methamphetamine charge to the custodial authority at the Ashland, Kentucky federal penal institution. Defendant also mailed notice of this request to the district attorney and clerk of court in Richmond County. The notice was not delivered to the office of the district attorney until 18 March 1996. On 2 May 1996 defendant was returned to the Richmond County Jail. Defendant appeals from the trial court's 13 September 1996 judgment.

[1] Defendant first argues that the trial court erred by not dismissing the charges against him because he was not timely tried in accordance with the Interstate Agreement on Detainers (IAD), N.C. Gen. Stat. § 15A-761 (1988). We disagree.

The IAD, as codified in N.C.G.S. § 15A-761, Article III(a) provides that a prisoner:

> *shall be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction* written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint[.] (Emphasis added).

Defendant argues that the 180 days began to run on or about 22 January 1996, the date the district attorney should have received the request, rather than 18 March 1996, the date that the district attorney

actually received the request. In essence, the determination of whether defendant's rights under the Interstate Agreement on Detainers were violated is dependent upon when the 180 days under Article III began to run. As the United States Supreme Court held in *Fex v. Michigan*, 507 U.S. 43, 47, 122 L. E. 2d 406, 412 (1993), "[t]he outcome of [this] case turns upon the meaning of the phrase, in Article III(a), 'within one hundred and eighty days after he shall have caused to be delivered.' " In *Fex*, the U.S. Supreme Court found that "the textual requirement 'shall have caused to be delivered' is simply not susceptible" to an interpretation which places the burden of compliance with the statute upon the law enforcement officers involved. *Id.* at 52, 122 L. Ed. 2d at 415.

Similarly in this case, we hold that this language cannot be interpreted as requiring the district attorney to inquire as to whether a defendant has mailed written notice of his request for final disposition of his case. The guarantee of a disposition of a defendant's case within 180 days is not a constitutional requirement, but rather it is mandated by the General Assembly. For this reason, as the United States Supreme Court stated in *Fex*, 507 U.S. at 52, 122 L. E. 2d at 415, policy arguments made by the defendant regarding whether he should bear the consequences of the failure of delivery are "more appropriately addressed to the legislature[]."

**[2]** Next the defendant argues that the trial court committed error in not suppressing evidence seized during a search of his residence without a warrant and without his consent to enter the premises. We disagree. In *Segura v. United States*, 468 U.S. 796, 810, 82 L. Ed. 2d 599, 612 (1984), the United States Supreme Court held that "securing a dwelling, on the basis of probable cause, to prevent the destruction or removal of evidence while a search warrant is being sought is not itself an unreasonable seizure of either the dwelling or its contents." The Court reasoned that because the information leading to the issuance of the warrant was obtained independently from any information obtained during the search of the premises, whether the search was illegal or not was irrelevant.

As in *Segura*, Sweat obtained information that drugs were stored at the Treeces' residence from an independent source, specifically, an informant. Sweat obtained a search warrant based upon: (1) information from an informant Sweat described in the search warrant application as a "reliable confidential source of information"; and (2) Sweat's observation of a large number of vehicles going to and from

the defendant's residence in a short time "in such a manner [that] is consistent with a place where the sale of illegal drugs is taking place." Sweat did not obtain a search warrant based upon information obtained during his security check of the premises.

> Whether the initial entry was illegal or not is irrelevant to the admissibility of the challenged evidence because there was an independent source for the warrant under which that evidence was seized. Exclusion of evidence as derivative or "fruit of the poisonous tree" is not warranted here because of that independent source.

*Id.* at 813, 82 L. Ed. 2d at 614; *see State v. Wallace,* 111 N.C. App. 581, 589, 433 S.E.2d 238, 243, *disc. review denied,* 335 N.C. 242, 439 S.E.2d 161 (1993) (discussing application of independent source rule). The officers' entry into defendant's residence did not contribute to the discovery of the evidence seized under the warrant. We hold that the trial court did not err by admitting the seized evidence.

We have reviewed defendant's remaining assignments of error and find them to be without merit.

No error.

Judges LEWIS and TIMMONS-GOODSON concur.